# DECISIONS

---

## Evans, Appellant, v. Wilder, Appellee.

1. A deputy sheriff may execute a deed for land sold under execution, but it must be in the name of his principal.
2. A. became the purchaser of land at sheriff's sale, while the act of 28th June, 1821, for the relief of debtors and creditors, was in force. In pursuance of that act, a certificate of purchase, signed by the *deputy* sheriff, was given to the purchaser. A judgment creditor redeemed the land, and took a deed for the same, dated 26th May, 1826, and executed by the successor in office of the former sheriff. The act of 28th June, 1821, was repealed 11th January, 1822, with a saving of the validity of all proceedings had under the same before the repealing thereof. Held: That the certificate of purchase, given by the sheriff, under the act of 28th June, 1821, did not authorise his successor to execute the deed, for that could only be done by petition to the circuit court; but even if the sheriff had been so authorised, yet the certificate of purchase being signed by the deputy sheriff in his own name, was void.

Appeal from the St. Louis Circuit Court.

Spalding, Geyer, & Bowlin, for Appellant.

Gamble for Appellee.

*Opinion of the Court, delivered by Scott, Judge.*

Evans
v.
Wilder.

This case is reported in the 5th volume of the Missouri Reports, page 313.   Since the reversal of the former judgment it has been tried again in the circuit court, and is a second time brought here by appeal.   In addition to the facts stated in the former report of the cause, it appears that Evans, on the last trial, in order to show title in himself, produced in evidence a judgment which Adam Everly had recovered against Risdon H. Price, in the St. Louis circuit court, on the 25th day of August, 1820, for the sum of $914.15.   On this judgment an execution issued, dated the 26th December, 1820, and made returnable to the first Monday of April following.   After the return day named in the writ, the sheriff advertised the lot in dispute for sale, and after giving twenty days notice, sells the same during that term of the court.   It appears from recitals in the advertisement, and the sheriff's deed, that a levy was made on the lot prior to the return day of the execution, and a sale advertised, which did not take place, for the reason it was countermanded by the plaintiff in the execution.   Hempstead became the purchaser of the lot at the sale, and received a deed, bearing date May 29th, 1821, and afterwards by a deed in which it was recited he had purchased the lot as agent for certain creditors of Risdon H. Price, and that Price had made arrangements with those creditors, and that he, Hempstead, had no equitable title to the lot, and that it was claimed by several creditors of Price, conveyed the same to Gustavus A. Bird, without recourse, in consideration of the sum of $25, paid by him to defray the expenses of the trust incurred by Hempstead, in trust to secure to him, Bird, the said sum of twenty-five dollars, and then for the use of R. H. Price, subject to the claims and liens of his creditors. Bird afterwards by a deed, reciting the circumstances under which he took the lot from Hempstead, and the trust to which it was subject, and that Evans had recovered a judgment against Price, and that the outstanding title was an obstacle to his rights, conveys the lot to Evans, the appellant, for the sum of $28.75, to hold the same in trust for the said

Price, subject to the amount Evans had paid, and all the just claims and liens of the creditors of said Price.

The court are divided in opinion as to the validity of the title to the lot thus made out by the appellant Evans, and the opinion of the majority is based on a point that was made when this case was formerly before the court, and which at that time it was deemed unnecessary to determine. It will be recollected, that the appellee, to show an outstanding title in a third person, and thereby defeat the recovery of the appellant, gave in evidence several judgments and executions therein issued from the supreme court of this State; that these executions were executed under the law of the 28th June, 1821, for the relief of debtors and creditors, and Thomas F. Riddick became the purchaser. In pursuance of said act, a certificate of purchase was granted to Riddick. This certificate was signed by the deputy sheriff. Perschouse, a judgment creditor of Price, redeemed the lot, and took a deed for the same to himself and Comegys. This deed was executed by I. K. Walker, the successor in office to J. C. Brown, who was the sheriff when the lot was sold to Riddick. This deed was dated the 26th May, 1826. The act for the relief of debtors and crediiors was repealed on the 11th January, 1822, with a saving of the validity of all proceedings had under the same before the repealing thereof. Something was said in the argument of the cause, about the constitutionality of the act of 1821, for the relief of debtors and creditors; but the question here under consideration will not be affected by the manner in which the question of its validity may be determined. If the law was unconstitutional, then it would seem that the whole interest in the land would pass to the purchaser, and he would take it without any equity of redemption, either in the debtor in the execution or his judgment creditors: but then there must be some instrument in writing, conveying the title to the purchaser, for it has been determined that a sheriff's sale is within the statute of frauds and perjuries. Simonds v. Catlin, 2 I. R. The purchaser then must obtain a title either from the certificate of the sheriff, or by a deed executed in conformity with the general law on the subject of executions.

MAY TERM.
1842.

Evans
v.
Wilder.

A deputy she-
riff may exe-
cute a deed for
land sold un-
der execution,
but it must be
in the name of
his principal.

A. became
the purchaser
of land at she-
riff's sale,
while the act
of 28th June,
1821, for the
relief of debt-
ors and credi-
tors, was in
force. In pur-
suance of that
act, a certifi-
cate of pur-
chase, signed
by the *deputy*
sheriff, was
given to the
purchaser. A
judgment cre-
ditor redeem-
ed the land,
and took a
deed for the
same, dated
26th May,
1826, and ex-
ecuted by the
successor in
office of the
former sheriff.
The act of 28th
June, 1821,
was repealed
11th January,
1822, with a
saving of the
validity of all

If he relies on the certificate of the sheriff, it will fail him, because it was signed by the deputy sheriff, and not in the name of his principal. A deputy sheriff may execute a deed for land sold under execution; but then it must be in the name of the principal. A return to an execution signed by the deputy sheriff is void. Simonds v. Catlin, ib. It is not pretended that a deed for the lot was executed in conformity to the provisions of the law regulating sales under execution, but it is urged that the deed from Walker, the sheriff, to Perschouse and Comegys, Walker being the successor of J. C. Brown, the sheriff when the sale was made, is sustained by the provision of the act for the relief of debtors and creditors, which authorised the successor in office to the sheriff who made the sale, to execute a deed to the purchaser for the land sold under execution, if it is not redeemed. The act for the relief of debtor and creditor was repealed before the execution of this deed; the repealing law preserves every thing that had been done under it ; it saves the rights that had been acquired by it; but there is nothing in its provisions that would justify the construction that its vitality is continued as to the sales that had taken place under it, until the rights acquired by those sales had ripened into legal titles. If this construction was necessary for the preservation of those rights, or if there was no other mode pointed out by which titles to the lands purchased under the law could be acquired, there would be more propriety in insisting on it. But there was a provision applicable to such cases, which prescribed the mode by which a party purchasing lands at a sheriff's sale should obtain a deed for the same from the successor to the sheriff by whom the sale was made. The certificate delivered to the purchaser under the act, if properly authenticated, would be evidence that the purchaser was entitled to a deed, and would facilitate the obtaining of one; but of itself, it did not operate as a deed, nor did it authorise the successor to the sheriff to execute one to the purchaser: that could only be done by petition to the circuit court, setting forth the facts necessary to entitle the party to a deed. This step has not been taken, and we are constrained to say, that the deed having been executed with-

out authority of law, is void. But even admitting that the act for the relief of debtors and creditors continued in force as to the sales that had taken place under it, and authorised the successor to the sheriff making a sale to execute a deed for the land sold, if Riddick obtained no right under the sale, the certificate being signed by the deputy sheriff, and therefore void, how could others derive a title through him? By the ancient common law a sheriff was not required to sign the returns; but by a statute passed as early as the twelfth year of Edward the second, he was required to return his name, together with the writ.

Judgment reversed.

*Opinion of Napton, Judge.*

Many of the points in this case have been determined by this court when it was before the court in 1838. See 5th Mo. Rep. p. 313. The judgment of the circuit court having been reversed, and the case remanded, it is a second time brought before this court, and, as now presented, involves the consideration of a new title set up by Evans. This title is derived from a judgment and sale in favor of one Adam Everly against Risdon H. Price. This judgment was in August, 1820; execution issued 26th December, 1820, returnable the first Monday of April following. The return of the sheriff was as follows: "Rec'd. 28th December, 1820, John K. Walker, D. Sh'ff. Entered on E, book No. 2. Interest $33.34; single comm. $15.16; am't. $981.18. Made by the sale of the property described in the enclosed advertisement, to C. S. Hempstead, on the first day of May, 1821, the sum of one hundred and ninety-three dollars. The costs were paid by the defendant, Price, previous to the sale.

JOHN K. WALKER, D. Sh'ff."

The advertisement above referred to, was as follows:—
"Sheriff's sale. By virtue of one writ of execution to me directed, from the circuit court of St. Louis county, returnable to the April term of said court, 1821, (which is now in session,) in favor of Adam Everly against Risdon H. Price, on which certain property of said Price was advertised to

---

MAY TERM.
1842.

Evans
v.
Wilder.

proceedings had under the same before the repealing thereof. Held: That the certificate of purchase, given by the sheriff, under the act of 28th June, 1821, did not authorise his successor to execute the deed, for that could only be done by petition to the circuit court; but even if the sheriff had been so authorised, yet the certificate of purchase being signed by the deputy sheriff in his own name, was void.

MAY TERM.
1842.

Evans
v.
Wilder.

be sold on Friday the sixth day of April last, but was post-poned by request of plaintiff's attorney, I have levied upon, (Here follows a description of the property.) 1 will sell to the highest bidder, for cash, at the court house door, in the town of St. Louis, on Tuesday, the first day of May next, between the hours of nine o'clock, A. M. and six, P. M. of said day, to satisfy said execution and costs. St. Louis, April 10th, 1821.        ISAAC C. McGIRK, D. Sh'ff.

For Jos. C. Brown, Sh'ff."

. The sheriff's deed made to Hempstead, the purchaser, re-cites, that a levy was duly made in March, 1821, as appears by advertisement accompanying the execution, &c. It ap-pears, then, from the execution, return, and advertisement, that the sheriff first advertised the property in March before the return day of the writ, but that no sale took place in pursuance of that advertisement, in consequence of direc-tions given by the plaintiff's attorney. It appears, also, that during the term, and after the 6th day of the same, the she-riff again advertised the property for sale, and that it was sold under the last advertisement. The validity of this pro-ceeding is questioned, on the ground that after the return day of the writ the sheriff had no power to levy on the pro-perty, and consequently that the sale under that levy con-veyed no property. A *levy*, it appears to be agreed on both sides, is nothing more than an appropriation, by the sheriff, of the land designed to be levied on, indicated by some act, such as advertisement, or hand-bills. It is also conceded that when the levy is made before the return day of the writ, any act necessary to complete the sale, performed af-ter the return day of the writ, will be valid, at least in favor of a bona fide purchaser. But where there is no levy be-fore the return day of the writ, I understand the law to be well settled, that a subsequent levy will be void. I have seen no authority which calls in question this doctrine. As the act of 7th Nov. 1808, however, allows the sheriff until the last day of the term to make his return, it is supposed that the writ is kept alive during the whole term, not only for the purpose of selling the property advertised previously to the commencement of the term, but for the purpose of mak-

ing the advertisement or levy itself. To this argument I cannot assent. The policy of the law, or express statutary provisions, may, for good reasons, give efficiency and vitality to a writ for certain purposes, and to secure the rights of innocent purchasers. The return day of the writ, is a matter appearing on the face of the writ; it is not necessarily the same as the day in which the law allows the sheriff to return his writ. This statute, giving the sheriff until the last day of the term to make his returns, does not affect the question, what is the *return day of the writ?* That question is answered by looking at the writ itself, and in that way only. This writ was made returnable, not at any day during the term, but on a specific day, and after that day had passed by, the sheriff made his levy, and under that levy sold the property. Such sale, in my opinion, conveyed no title. Entertaining this opinion in relation to the sales under the Everly judgment, I think it unnecessary to inquire into the effect of the conveyances from the sheriff to Hempstead, from Hempstead to Bird, and from Bird to Evans. The title of Wilder, under the judgments recovered in this court, in favor of Hunter, Coalter, and the Bank, was investigated by this court when the case was before the court in 1838. Such points as this court passed upon and decided in the former investigation, I do not propose to re-examine. There are some questions, however, touching the validity of this title, which seem not to have been decisively acted on by the court. One objection made on the trial, which, if sustained, would appear to be fatal, was the want of a legal deed from the sheriff to Comegys and Perschouse. On this objection the court, in its former examination of the case, did not undertake to decide. To effectuate the rights of innocent purchasers at Sheriff's sales, especially after a great lapse of time, courts have not been disposed to look very closely into the regularity of all his proceedings. Irregularities on the part of the sheriff have been held not to vitiate a title derived under his sale; but when a question of power on the part of the sheriff is involved, it rests on different grounds. If the sheriff has no power to sell, his deed must be ineffectual to convey title. In this case, after the repeal

34

of the act of 20th June, 1821, for the relief of debtors and
creditors, by the act of 11th January, 1822, the sheriff then
in office undertook, by virtue of authority vested in him by
the first named act, to convey this land to Comegys and
Perschouse, who were judgment creditors. The repealing
act provided, that all proceedings had under the authority
of the act of 1821. *before the passage of the repealing act,*
should be valid. This deed did not come within the *terms* of
the repealing act; was it embraced within its spirit and
meaning? If the vested rights secured by the repealing act
of 1822, could not be enforced, except under the provisions
of the act of 1821, it might induce a court to strain the lan-
guage of the act of '22, in order to give efficacy to its pro-
visions. But if the general law in force at the time of the
repealing statute provided ample remedies for enforcing the
rights which accrued under the redemption law, there would
be no reason for disregarding the letter of the repealing law,
with a view to seek remedies for rights that had accrued and
been secured. The law in force at the time when the repeal-
ing act passed, provided a mode by which purchasers at she-
riff's sale might procure a title from the successor of the
sheriff who made the sale. That course was not pursued
here. The sheriff, of his own amotion, without any action
on the part of the court, with no means of officially know-
ing the steps taken by his predecessor, undertook to make
the deed to Comegys and Perschouse, under the act of 1821.
It has been suggested in argument, that the *certificate* of the
sheriff under the act of 1821, would be sufficient of itself, if
the law were unconstitutional, or the subsequent deed void,
to convey the legal title. It may be observed, that it is a per-
vading principle in all our laws on this subject, that a sheriff's
sale does not of itself convey the legal title. The sheriff's
certificate, under the act of 1821, could not have been de-
signed or supposed to convey the legal title; if it had, no
subsequent provision would have been made for executing
a deed. Nor was it ever held under our laws previous to
1821, or since, or under similar acts of other States, that a
*mere sale* by a sheriff, passed the legal title. If, then, the act
of 1821, for the relief of debtors and creditors, was uncon-

stitutional, or the deed made under its provisions, but after its repeal, was void; it is clear, that the legal title of Price, at the time of the sale under executions issued on the judgments of this court, was not divested. No objections appear to have been suggested to the title derived under Evan's judgments in 1829. The judgment of the circuit court should in my opinion be reversed, and the cause remanded.