GIBBONS *et al.*, Appellants, *vs.* GENTRY, Respondent.

1. G. in Kentucky, in 1829, executed a deed for slaves to trustees, to be held, with their increase, for the benefit of G. and wife during their lives, and after their deaths to be divided among their children. This deed was acknowledged and recorded. The certificate of acknowledgment ran in the name of J. B., clerk of the county court, but was signed at the foot " J. B., by J. J. A., deputy clerk." G. remained in possession of the slaves, and shortly afterwards removed with them to Missouri, where he sold two of them to the defendant, who had notice of the deed, and the surviving trustee joined in the bill of sale. In a suit brought by the children of G., after the death of himself and wife, to recover the two slaves thus sold and their increase, *Held,*

1. That the deed was not void *upon its face* under the laws of Kentucky in force when it was executed, and that the acknowledgment was sufficient.

2. That the legal title not being in the plaintiffs, the suit was not properly brought; that it should have been in the name of the trustees, or if they were dead, or refused to accept the trust, the petition should have been framed for the appointment of trustees, or for the execution of the trust without their intervention.

### *Appeal from Marion Circuit Court.*

This action was brought in 1851 by the children of Isaac B. Gibbons, to recover, upon the legal title, slaves claimed by them under a deed executed in Kentucky in 1829 by their father, since deceased, under whom also the defendant claimed by purchase in Missouri in 1831. The record showed the following facts :

On the 31st of July, 1829, Isaac B. Gibbons, then residing in Green county, Kentucky, executed a deed to Stanton Buckner, of Marion county, Missouri, and Richard A. Buckner, of Green county, Kentucky, for the slaves in controversy and

others, to be held by them in trust for the support and maintenance of the grantor and his wife during their lives, and the education of their children, and after their death, to be divided among the children. This deed is set out at large in the opinion of the court, together with the certificate of acknowledgment and of record. It was acknowledged and recorded in Green county, Kentucky, September, 18, 1829, and in Marion county, Missouri, March 12, 1831. Gibbons remained in possession of the slaves after the execution of the deed, and in October or November of the same year, removed with them to Marion county, Missouri. The defendant offered evidence tending to show that Gibbons was largely indebted when he executed the deed; but there was other evidence tending to show that he paid all his debts in Kentucky, before removing to Missouri. It was in evidence that in July, 1829, Gibbons owned no other property of consequence than the slaves included in the deed. There was evidence tending to show that Richard A. Buckner, who died in 1848–9, in Kentucky, accepted the trust and acted under it; but that Stanton Buckner, the other trustee, who went to California, in 1850, had always refused to act.

After Gibbons removed to Missouri, he continued to remain in possession of the slaves, having but little other property. He contracted debts, judgments were recovered against him, and executions issued, which were levied upon some of the slaves. In March, 1831, he sold two of the slaves to the defendant, and with the price received paid off the executions and other debts contracted for the support and maintenance of his family before the Kentucky deed was recorded in Marion county. Before making the purchase, defendant heard of the Kentucky deed, and applied to Stanton Buckner for information, by whom he was told that the deed was of no effect, neither of the trustees having accepted the trust or acted under it, and Gibbons having always been in possession of the slaves. At the request of the defendant however, Stanton Buckner joined in the bill of sale, as did also Williams, the son-in-law of Gibbons, whose widow was one of the plaintiffs. The bill of sale

to defendant was dated March 14, 1831, after the Kentucky deed was recorded in Marion county, but there was evidence that the purchase was made before that date. Gibbons afterwards removed to Arkansas, where he died in 1848, his wife having died some years prior to that date. This action was brought by his children to recover the two slaves sold to the defendant and their increase.

It was agreed that all the statutes of Kentucky bearing upon the questions in the case should be considered in evidence.

The Circuit Court refused all the instructions asked by the plaintiffs, and gave all asked by the defendant, including the following :

" If the jury believe from the evidence, that the defendant purchased the two slaves from Isaac B. Gibbons in 1831, and paid said Gibbons a fair price for said slaves, the deed under which the plaintiffs claim is void as to the defendant, and they ought to find a verdict for the defendant.

The plaintiffs submitted to a nonsuit, and appealed to this court.

*Glover & Richardson,* (with *Richmond,*) for appellants. 1. The deed of trust executed by Gibbons in 1829 was a valid deed, and vested in the trustees a remainder in the slaves to the use of the children of the grantor after the death of himself and wife. It was not void as immoral or contrary to public policy. (2 Kent, 352. 2 Black. 398. 3 Litt. (Ky.) Rep. 276. 7 Harr. & John. 257. 1 Humph. 273. 2 Yerger, 584. 9 Gill & John. 77. 1 Florida, 86. 13 Ala. 738, 748. 2 Brevard, 38. Id. 411. 5 Humph. 393. 1 Rawle, 349.) 2. All the statutory provisions in force in Kentucky, necessary to the validity of the deed, were complied with. It was acknowledged within eight months after it was executed, and recorded. (1 Morehead & Brown's Dig. p. 738–9.) 3. The trust for the children was fully established by the deed, whether the trustees accepted it or not. A trust is never allowed to fail for want of a trustee. 4. The deed was recorded in Marion county, Missouri, in due time ; but it was not neces-

sary that it should have been recorded there at all. The title once vested according to the laws of Kentucky, it could not afterwards be divested by way of forfeiture for non-compliance with further conditions. (13 Ala. 737, 742. 4 Humph. 211. Martin & Yerger's Rep. 102. 13 Pet. 106. 11 Mo. Rep. 556. Story on Conflict of Laws, p. 219, §263.) 5. The statute of limitations is no bar to the plaintiffs' claim, because their right of action did not accrue until the death of their father and mother. 6. It is said that this deed was void as a conveyance *to the use* of the grantor under the statutes 50 Edward III, ch. 6, and 3 Henry VII, ch. 4, which are alleged to have been in force in Kentucky when it was executed. But those statutes were never construed to avoid any deeds except *such as were made with a fraudulent intent.* (2 Reeves' Eng. Law, p. 401. 4 id. p. 140. Crabbe's Eng. Law, p. 440. 2 Kent, 440. *Trevor* v. *Trevor,* 1 P. Wm's, 621. *Glanville* v. *Payne,* 2 Atk. 39. 1 Eq. cases, abridged, top p. 39. *Scroggs* v. *Scroggs,* Ambler, 72. *Harvey & wife* v. *Ashley,* 3 Atk. 607. 2 Vernon, 702. *Holloway* v. *Headington,* 8 Simons, 324, (11 Eng. Ch. Rep. top p. 459.) 2 Vesey, jr. 331. 2 P. W'ms, 349. *Davenport* v. *Bishop,* 2 Younge & Coll. 451. 2 Mylne & Craig, 376. 2 Irish Eq. Rep. 113. *Williams* v. *Williams,* 15 Vesey, 419. 4 Brown P. C. 580. 1 Cox Ch. Rep. 215. 7 Hare, 318. Atherly on Settlements. Cowp. 432. 4 Kent, 349.) It may be that merely passive or nominal trusts might be held to be within these statutes, but not active trusts. (5 Iredell, 578. Id. 255. 1 Hill, (S. C.) 413. 1 Dev. Eq. Rep. 359. 1 Johns. Ch. Rep. 54. 11 Paige, 136. 1 Sandf. Ch. Rep. 104. 4 Paige, 354.) Even if the conveyance to the use of Gibbons during his life should be held void under these statutes, it does not follow that the interests of the remaindermen must be held void also. 7. The deputy clerk of the county court had power to do all that the principal could do.

The following Kentucky statutes were referred to by the appellants as those upon which they relied: 1 Morehead &

Brown's Dig. p. 429, tit. "Conveyances," top p. 432. Ib. 437, 443, 612, 734 to 741. 2 Ib. tit. "Slaves," p. 1471 to 1480 inclusive. 1 Ib. 175, 411.)

*Pratt & Redd*, for respondent. I. The deed under which plaintiffs claim, being a voluntary deed, was, as the law stood prior to the Kentucky statute of frauds, absolutely and *per se* void as to a subsequent purchaser for value, with or without notice. (2 Taunt. 82. 2 Black. Rep. 1021. 1 Bos. & Pull. 334. 2 Vesey, sr. 10. 1 Atk. 94, side p. 18 Vesey, jr. 89. Ib. 111. 1 Cowper, 280.) II. The law stood thus until the passage of the statute of frauds of 1798, (Littell & Swigert's Dig. p. 618,) and the 41st section of the act concerning "Slaves," (Littell & Swigert's Dig. 1158, 2 Morehead & Brown's Dig. 1479–80,) by which a voluntary deed might be shown to be good, by proof that it was legally acknowledged or proved and recorded within eight months. This deed was not legally acknowledged or proved. There was no law in force in Kentucky in 1829 which authorized a *deputy clerk* to take the proof of deeds. III. The plaintiffs can claim no title to these slaves under the deed of their father, for the following reasons : 1. They were disposed of by the grantor during his life for the support of himself and the plaintiffs, his children, and the deed can only take effect as to such as remained undisposed of at his death. 2. It was a conveyance *to the use* of the grantor who was largely in debt at the time. The statute 3 Henry VII, ch. 4, was in force in Kentucky at the date of the deed. 3. Admitting that the deed gives the plaintiffs an equity in the slaves, and that they might file a bill to enforce the trust, yet they cannot recover in this action, in which they sue for the possession. By the terms of the deed, the trustees alone were entitled to the possession.

RYLAND, Judge, delivered the opinion of the court.

Some time in July, 1829, Isaac B. Gibbons, the ancestor of the appellants, who then resided in Green county, in the state of Kentucky, having wasted a large portion of his estate by

dissipation, made a deed to trustees, of which the following is a copy :

" This indenture, made this 31st of July, 1829, between Isaac B. Gibbons, of the county of Green and state of Kentucky, of the one part, and Stanton Buckner, of the state of Missouri, and Richard A. Buckner, of the county of Green aforesaid, of the other part, witnesseth : That the said Isaac B. Gibbons, for the love, good will and affection which he has towards his children, Louisa B. Gibbons, Judith Presley Thornton Gibbons, Morris Gibbons, and Caroline Aylett Gibbons, and also for the consideration of one dollar, in hand paid, the receipt of which is acknowledged, hath granted, bargained, sold and delivered to the said Stanton Buckner and Richard A. Buckner, the following slaves, to-wit : Abram and Molly, his wife ; Ben, John, Spencer, Peter, Jack, Dick, Brent, George, Manuel, Spencer, (son of Nancy,) Lucinda, Nancy, Ellen, Maria, Lydia, (daughter of Lucinda,) and Jane, and their future increase : To have and to hold the said slaves and their increase to the intents, uses and purposes following, to-wit : That the said Stanton Buckner and Richard A. Buckner are to retain the title and possession of said slaves and their increase, and to permit the full benefit of their labor and hire to be applied to the support and maintenance of the said Isaac and his wife, for and during their natural lives, and for the support, maintenance and education of their said children.   At any time that the said Gibbons and wife may choose to deliver any of said slaves to any one of their children before mentioned, on being requested by the said Gibbons and wife, the said trustees, jointly or separately, are to permit such child to take said slave or slaves so designated, and to charge them at a fair valuation to such child, taking care not to permit any child to take more than what may be supposed to be his or her equal part ; and at the death of said Gibbons and wife, whatever may still remain on hand, not so disposed of, is to be divided among the said children, so as to make their respective parts as nearly equal as possible.   To Elizabeth L. Williams, daughter of

said Isaac, he has already given a negro man named Robert, and a negro woman named Lydia, which were estimated at one thousand dollars at the time they were given. If the parts of said negroes and their increase, which may be given to each of said children named above, be more than equal to the value of the two given to said Elizabeth L. Williams, at the time they were so given, such child so receiving shall pay or secure to be paid to said Elizabeth, so much as will make the part of said Elizabeth equal to any one of the other children first named, or said part may be retained, so as to make said Elizabeth's equal to the respective parts of the other children, the design being to make all the children equal in their respective parts, including the said Elizabeth. In testimony whereof, the said Gibbons hereunto sets his hand and affixes his seal, the day and year first above written.     "ISAAC B. GIBBONS, (seal.)

"Test: Aylett Buckner, Arthur P. Buckner, Kentucky."

This deed was proved and recorded in the office of the clerk of the county court of Green county, Kentucky, in the manner shown by the following certificate endorsed thereon:

"I, John Barret, clerk of Green county court, do hereby certify that this deed of gift from Isaac B. Gibbons to Stanton Buckner and Richard A. Buckner, trustees for Louisa B. Gibbons, Judith Presley Thornton Gibbons, Morris Gibbons and Caroline Aylett Gibbons was, on the 31st day of July, 1829, presented to me in my office, and proven by the oath of Aylett and Arthur P. Buckner, the two subscribing witnesses thereto, to be the act and deed of the said Isaac B. Gibbons; whereupon, the same, together with the foregoing certificate, is truly recorded in said office. Given under my hand this 18th of September, 1829.

"JOHN BARRET,
"By JAMES J. ALLEN, D. C."

Some time in March, 1831, the said deed was again acknowledged before Theodore Jones, recorder of Marion county in this state, and recorded in his office, in conformity to the laws of this state. Isaac B. Gibbons removed with his family from Green

county, Kentucky, to Marion county, Missouri, in the fall of the year 1829, bringing with him the most of the slaves mentioned in the deed of trust.

After his reaching Missouri, he contracted debts, on which judgments were after a while obtained, and executions were had against him and levied on some of the said slaves.

On the 14th of March, 1831, I. B. Gibbons sold to the respondent, Moses Gentry, the negro woman, Nancy, one of the slaves in question, and her child, and with the consideration money received paid off the executions. Gentry immediately took possession of Nancy and her child, and has held them and other children, born of Nancy since, up to the commencement of this suit, which the plaintiffs bring, upon the ground that the sale to Gentry was in violation of the trust, and passed no title as against the appellants. Isaac B. Gibbons died in 1848, having survived his wife. Richard A. Buckner died in Kentucky in 1848 or '49.

The respondent stated in his answer that, prior to the purchase, he had heard of the deed of trust, and on inquiring of Stanton Buckner, was assured of its existence, but that said Buckner told him it was a sham business, prepared by the friends of Gibbons, who was addicted to drinking, to prevent his wasting his property. After this, he agreed to buy the negroes of Gibbons, if Buckner and Williams would join I. B. Gibbons in the bill of sale, which they did. Gentry insists, in his answer, that the deed of trust was never delivered, never legally acknowledged or recorded in Kentucky; denies that by such deed any interest passed to the appellants under the laws of Kentucky; that if said deed was executed, it was made with intent to defraud the creditors of Isaac B. Gibbons, who was indebted at the time. He insists that the bill of sale passed the title not only of Gibbons, but of his wife and children. He also relies on the statute of limitations of five years. On the trial, the appellants were forced to a nonsuit by the ruling of the court below.

On the argument in this court, several questions have been

made, which it is proper to notice; for, although the judgment below must be affirmed, on the ground of the suit not being brought by the proper parties, still it has been deemed by the court most advisable to give our views of some of these questions, should the parties interested see fit to renew the suit in proper mode hereafter.

From the ruling of the court below on several of the instructions asked, it is plainly to be seen that, in the opinion of that court, the deed of trust from Gibbons to the Buckners is void *per se*—void on its face. This, in the opinion of this court, is wrong; the deed is not void upon its face. No one will pretend to deny the power of Gibbons to convey this property to trustees for the benefit of his wife and children, if he had no creditors; and should have the deed acknowledged and recorded as the statute of Kentucky required. We will not pretend to give any opinion in relation to the statutes of 50 Edward III, ch. 6, and 3 Henry VII, ch. 4, being in force in Kentucky or not. Nor will we give any opinion of the laws of Kentucky bearing on this subject, further than to say that we consider the acknowledgment before the deputy clerk and his certificate sufficient. (*Moore* v. *Farrow*, 3 A. K. Marsh. 41.) We do not feel disposed to lay down the rules of law which may hereafter be invoked in this case; nor to express our opinion whether the intention expressed by the deed in question would be carried out by the principles of the common law or not. We say the deed is not fraudulent on the face of it—not a fraud *per se;* that it is properly acknowledged and certified by the deputy clerk; that the question of fraud made by the answer should have been submitted to the jury under proper instructions from the court.

There are cases certainly where it would be proper for the court to declare that a deed is fraudulent on its face. But the case should be a strong one to call for the exercise of this power. Fraud is so much a question of intention, so essentially a matter of fact, that it is better, in a majority of cases, to refer its existence or non-existence to the finding of a jury.

The old doctrine of fraud *per se*, once so familiar, has been greatly modified, and the courts are growing less inclined to administer its hasty conclusions, always severe, and sometimes unjust. In this instance, there is nothing on the face of the deed showing fraud, or authorizing the court to declare it void. But it is entirely proper for the defendant to show, if he can, that, in point of fact, the deed was made with the fraudulent intent charged in his answer; also, if I. B. Gibbons did, soon after the execution of this deed, voluntarily pay off all his creditors, the fact ought to be received as competent evidence in reference to the motive with which he is charged in making the conveyance.

The plaintiffs show a deed of trust by which the legal title to the property appears not in them at least. Now these trustees, if they accepted the trust, must sue if they are alive. If they did not accept the trust, or will not sue, then the petition must be framed for the appointment of a trustee, or that the court shall direct the execution of the trust. These were the views entertained by this court at the last term, and should then have been given. However, I now deliver them as the opinion of Judge Scott, Judge Gamble and myself, the judges before whom the case was then argued.

The judgment of non-suit is affirmed.