GOTTLIEB EYERMAN, Respondent, v. E. H. PAYNE ET
AL., Appellants.

**St. Louis Court of Appeals, November 22, 1887.**

1. PLEADING—ORDINANCES.—In pleading an ordinance it is generally
sufficient to give its purport and to state that it was duly passed
by an authorized body, without setting it out in full or reciting in
detail the steps preliminary to its passage.

2. SPECIAL TAXES — LIMITATIONS.—The statutory limitation of two
years applying to special tax bills begins to run from the date of
the bill, and not from the completion of the work for which it was
issued.

3. ——— SIGNATURE OF COMPTROLLER — PRIMA-FACIE EVIDENCE.
Special tax bills not signed by the comptroller and not signed in
the comptroller's name, by a deputy, are not *prima-facie* evidence
of the property owner's liability.

4. JUDICIAL NOTICE.—In the absence of any law providing for a dep-
uty, courts can not take judicial notice that the duties of a munic-
ipal officer are, or may be, performed by a deputy.

APPEAL from the St. Louis Circuit Court, LEROY B.
VALLIANT, Judge.

*Reversed.*

FORD & PAYNE, for the appellants: The counter-
signature of the comptroller is necessary to the validity
of a special tax bill. *Prendergast v. Richards*, 2 Mo.
App. 190 ; *Kiley v. Oppenheimer*, 55 Mo. 374 ; s. c., 79
Mo. 448. Constitutive facts must be alleged and proved.
That the ordinance (on which this whole proceeding
rests ) was passed on the recommendation of the board
of public improvements, or on the petition of a majority
of property holders, resident in the sewer district ; that
said sewer was made to connect with a public sewer or a
natural course of drainage, and the date of the comple-
tion of said sewer were constitutive facts. Sect. 22, art.

6, of the Scheme and Charter; *City of St. Louis v. Gleason*, 89 Mo. 67; *Nichols v. Larkin*, 79 Mo. 264, 271; *Kane v. Klausman*, 21 Mo. App. 485; *Thrush v. City of Cameron*, 21 Mo. App. 394; *Manufacturing Co. v. Schell City*, 21 Mo. App. 175, 181; *Furnishing Co. v. Wallace*, 21 Mo. App. 128, 132; *Inhabitants of Butler v. Robinson*, 75 Mo. 192; *Bradish v. James*, 83 Mo. 313.

ED. L. GOTTSCHALK, for the respondent: The tax bill is *prima-facie* evidence] of the liability of the person therein named as the owner of the land, charged with such bill, to pay the same. Scheme and Charter, art. 6, sect. 25; *City v. Oeters*, 36 Mo. 456; *City v. Coons*, 37 Mo. 44; *Neenan v. Smith*, 60 Mo. 292; *Ess v. Bouton*, 64 Mo. 105. The introduction of the tax bill makes out a *prima-facie* case, and it would be error to non-suit the plaintiff. *Seibert v. Tiffany*, 8 Mo. App. 33; *Waud v. Green*, 7 Mo. App. 82; *Lorenz v. Armstrong*, 10 Mo. App. 584. The tax bill implies a valid ordinance and shifts the burden of proof. *Stifle v. Dougherty*, 6 Mo. App. 441; *Waud v. Green*, 7 Mo. App. 82. The statutes of limitation begin to run from the date of the tax bill, not from the completion of the work. Scheme and Charter, art. 6, sect. 25; *City v. Armstrong*, 2 Mo. App. 599; *Anderson v. Holland*, 40 Mo. 600; *Prendergast v. Richards*, 2 Mo. App. 187.

THOMPSON, J., delivered the opinion of the court.

This was an action upon a special tax bill issued by the city of St. Louis to the plaintiff, for work and labor done and materials furnished in the construction of a sewer.

I. The first objection with which we have to deal is, that the petition states no cause of action. We are of opinion that this objection is not well taken. The reasons urged in support of this view are: (1) That it fails to allege that the ordinance which authorized the construction of the sewer was passed on the recommen-

dation of the board of public improvements, or on the petition of a majority of property holders resident in the sewer district. It has never been held, so far as we are aware, that, in actions on special tax bills, these prerequisites are constitutive facts which the pleader must set out in his petition. On the contrary, our understanding is, that it is sufficient for the pleader to plead the ordinance, alleging that it was duly passed; and that if these preliminaries to its enactment were not observed, this is matter of defence. (2) That the petition does not state that this so-called district sewer was made to connect with a public sewer, or with a natural course of drainage; but that, on the contrary, it pleads the ordinances authorizing its construction, and these ordinances do not contain any provision that the sewer should connect with the public sewer, or with a natural course of drainage. In support of this contention it is argued that, while, under the charter, a special tax bill is made *prima-facie* evidence of certain things, yet it is not made *prima-facie* evidence of the fact that the sewer, for the construction of which it is issued, was made to connect with a public sewer, or natural course of drainage. We are of opinion that it is not necessary for the petition to contain these recitals, and that if the sewer does not connect with a public sewer or with a natural course of drainage, it is matter of defence to be pleaded and proved, and, as it was neither pleaded nor proved in this case, this objection need not further be considered. (3) That the petition fails to state when the sewer district was completed, and that tax bills were issued on the completion of the same. The argument in support of this objection is, that the charter provides that, upon the completion of any public work for which tax bills are issued, such bills shall be issued, signed, and countersigned in a certain manner; that the ordinances, as pleaded in the petition, appear to have been passed in February, 1883; that the suit was not brought until June, 1885, more than two years after the passage of the ordinances authorizing the sewer district. We

see nothing in this objection, since the sewer must have been completed after the passage of the ordinances authorizing it, and it may have been completed long afterwards, and it is not necessary for the petition to state *when* it was completed. The statute of limitations begins to run from the date of the issuing of the tax bill; and if an unreasonable delay elapsed between the completion of the work and the issuing of the bill, during which time the fact of the doing of the work created a potential lien, or charge, upon the property of the defendants, this, if a good defence in law to the bill (which we do not decide one way or the other), would be an extrinsic defence to be pleaded and proved.

II. The defendants pleaded in their answer "that the plaintiff's cause of action arose more than two years prior to the filing of this suit." As this fact did not appear upon the face of the petition, or upon the face of the special tax bill which the plaintiff put in evidence, or arise out of any other evidence adduced by the plaintiff, it was for the defendants to make good this defence. This they failed to do. The statute of limitations thus pleaded is found in section 26, of article six, of the charter, which reads as follows: "Whenever any special tax bill issued heretofore, or hereafter to be issued, shall be paid, it shall be entered 'satisfied' on the register in the comptroller's office; and any bill that is not entered 'satisfied' within two years after its date, unless proceedings in law shall have been commenced to collect the same within that time, and shall be still pending, the lien shall be destroyed and of no effect against the land charged therewith." The limitation thus prescribed runs from the date of the tax bill, and not from the completion of the work; and as in this case the action upon the bill was brought within two years from its date, the defence as pleaded was not good.

III. The court refused to allow the defendants to show, upon cross-examination of the plaintiff, at what date the sewer was completed, they announcing that

their contention was that it was completed long prior to the date of the bill. This of itself would be no defence to the action. So to hold would be in effect to overrule the decisions of this court in *Prendergast v. Richards* (2 Mo. App. 187); *Eyerman v. Blakesley* (13 Mo. App. 407), and *Eyermann v. Provenchere* (15 Mo. App. 256), in which cases this court held that, where work has been done under a valid contract with the city, and the proper ministerial officer of the city has made out a tax bill, which, by reason of non-compliance with the charter or ordinances, is illegal and void, it is competent for him thereafter to correct his error by making out and issuing to the contractor a valid tax bill. If the lien of the tax bill expires within two years of the date of the completion of the work instead of the date of the bill, the power of amendment thus conceded to the officers of the city would, in many cases, be unavailing to save the lien and render the bill of any value.

IV. It transpired, on cross-examination of the plaintiff, that another tax bill, bearing a prior date, had been issued to the plaintiff for this same work. The court sustained objections to the attempts which were made on the part of the defendants to follow up the history of this bill, and to show by oral evidence its date. We see no error in this. The mere fact of a prior tax bill having been issued would have been no defence to the action, for the reason just stated. If a prior *valid* tax bill for the same work were outstanding, that, it seems, would be a good defence to an action on a subsequent bill; for, in issuing the former bill, the officers of the city would have exhausted their power, and the subsequent bill would be void. But, as we have held in the cases already referred to, a prior bill, void for some irregularity, does not exhaust the power of the ministerial officers of the city so as to prevent them from subsequently issuing a good bill. The existence of a prior valid bill would, nevertheless, be an extrinsic matter of defence, which the defendants would be required to plead, in order to lay a foundation for the in-

troduction of the evidence which they endeavored to introduce here.

V. When the tax bill was offered in evidence it was objected to, on the ground that it was not countersigned by the comptroller. The bill purports to have been countersigned by the deputy comptroller. By the provisions of the charter (art. 4, sect. 20) such tax bills are to be signed by the comptroller. By the terms of the same instrument (art. 4, sect. 1) the office of comptroller is created, which officer is elective by the qualified voters of the city. By section 45, of the same article, it is provided that "the assembly shall have power, by ordinance passed by a vote of two-thirds of the members-elect of each house, to create any other office which it may deem necessary, and to provide for the filling of the same."

It is easily perceived that it may be very necessary that there should be, in the office of the comptroller, a deputy capable of performing the merely ministerial functions of that officer during his sickness or necessary absence; otherwise the business of that important office would be entirely suspended at such periods, manifestly to the public detriment. Whether a deputy comptroller can perform any of the judicial or discretionary functions which are cast upon the comptroller by the charter, or by ordinances passed in pursuance thereof, we need not consider. Plainly this act was not of such a character. The provision of the charter (art. 6, sect. 24) which requires the countersigning of special tax bills by the comptroller merely directs a step in the act of registering such bills in the comptroller's office. The purpose of such registry is merely to preserve a record of such bills, showing whether they have been paid or not, so that intending purchasers of land may be able to know whether there are any such bills outstanding against it. The comptroller does not make the estimates of the work, or perform any of the acts which lead up to the making out and issuing of the bill; the countersigning of it by him is an act which may well be regarded as formal or

ministerial, and which may, therefore, be well performed by his deputy during his sickness or absence, if there is an ordinance creating the office and authorizing him to perform the duties of his principal in such cases. It has been held in many cases that ministerial acts which are required by statute to be performed by a particular officer are valid if performed by the deputy of such officer. It has been so held in respect of the taking of the acknowledgment of a deed. 1 Devlin Deeds, section 473, and many cases cited; *Gibbons v. Gentry*, 20 Mo. 468. We see no reason why this principle should not be applied to an act of the comptroller of the city of St. Louis, such as the one in question.

But while we have deemed it important, in view of the fact that there may be outstanding many special tax bills countersigned by the deputy comptroller, to express our opinion as to the validity of such countersigning, we must hold that the plaintiff in this case is not entitled to recover upon the evidence adduced by him, because he failed to prove the ordinance under which the deputy comptroller is alleged to have been appointed. He pleaded it in his petition, but offered no evidence in support of the allegation. The trial court could not, of course, take judicial notice of the existence and provisions of a city ordinance, nor judicially know of the existence of an office created by such ordinance, or the duties thereof. The ordinance itself would be the proper evidence of the fact that the office had been created and of the duties of the officer named therein. This was not proved by putting the incumbent of the alleged office upon the witness stand and by his testifying to the fact that he held the office. The tax bill, not being signed by the comptroller, is presumptively invalid, and in order to overcome this presumption it was necessary for the plaintiff to prove that the office of deputy comptroller had been created by an ordinance passed by a two-thirds vote of the members-elect of each house, as required by the provision of the charter above quoted, and, also, that the ordinance empowered the deputy comptroller, whose office was

thus created, to act in the given instance for the comptroller.

But even if it were proved that the office of deputy comptroller had been regularly created and its incumbent appointed, yet, under our decisions, the present tax bill is void, because not properly signed by the deputy comptroller in the name of his principal. Our Supreme Court has several times decided that acts done by a deputy in his own name, and not in the name of his principal, are void. Thus in *Atwood v. Reyburn* (5 Mo. 533) it was held that a return of service of summons, signed by a person merely with the addition of "D. C.," meaning deputy constable, would not be sufficient, without a subsequent appearance of the defendant, to give the court jurisdiction ; and the same was held respecting a return of process so signed by a deputy sheriff, in *McClure v. Wells* (46 Mo. 311). In *Evans v. Wilder* (7 Mo. 359) it was held that a certificate given to a purchaser of land at a sheriff's sale, signed by a deputy sheriff in his own name, was void. In *Samuels v. Shelton* (48 Mo. 444, 450) it was held that a sheriff's deed, acknowledged by a deputy sheriff in his own name, was void as being "no acknowledgment at all." "The deputy," said Wagner, J., "can only act in the name of his principal."

Upon the same grounds we must hold that the countersigning of this tax bill by a deputy comptroller in his own name is void ; that, as the bill is not countersigned in compliance with the provisions of the charter, it is also void, and is not *prima-facie* evidence of the facts recited in section 25 of article 6 of the charter, and that it will not support an action to charge the land therein described. Nothing herein decided will prevent the plaintiff from surrendering the present bill and procuring a new one, properly countersigned, and maintaining an action thereon.

The judgment of the circuit court will be reversed with the concurrence of all the judges.